UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05MBD10018

MBD No. _____

IN RE: PUBLIC OFFERING PLE
ANTITRUST LITIGATION

Case pending in District Court
for the Southern District of New York
00-CV-7804 (LMM)

<u>Oral Argument Requested</u>
Pursuant to L.R. 7.1(D)

# MEMORANDUM OF LAW IN SUPPORT OF STUART CABLE'S MOTION TO QUASH PLAINTIFFS' SUBPOENA

**Introduction and Background**

Plaintiffs in the underlying action ("Plaintiffs") have served a subpoena (the "Subpoena") on nonparty Stuart Cable ("Mr. Cable") whose P.C. is a Partner in the Boston office of the law firm, Goodwin | Procter LLP. The Subpoena (attached hereto as Exhibit A) seeks both the production of documents and the deposition upon oral testimony of Mr. Cable. Mr. Cable has served plaintiffs with his objections to the production of documents pursuant to Fed. R. Civ. P. 45(c)(2)(B) on a number of grounds, including burden and overbreadth, and now brings their accompanying Motion to Quash the Subpoena (the "Motion to Quash"), seeking to foreclose both the taking of Mr. Cable's deposition and the production of documents. This motion should be granted because Mr. Cable has no connection with the matters alleged in the complaint and plaintiffs are simply (and improperly) seeking to subpoena expert testimony to support their claims under the guise of compelling production of fact evidence.

The underlying action, pending in the District Court for the Southern District of New York, is a purported class action brought by certain named Plaintiffs, including three corporations characterized as "issuer[s] of stock in . . . IPO[s]" occurring in 1995 and 1996. (<u>See</u>

paragraphs 9 through 18 of the Consolidated Class Action Complaint in the underlying action, the "Complaint" attached hereto as, Exhibit B.) Members of the purported class are described as "all corporations and other entities . . . who, [between at least January 1994 and July 6, 2001], issued an initial public offering of securities with an aggregate value between $20 million and $80 million using the services of any defendant." (Exhibit B, paragraph 50.) Named as defendants are 28 prominent entities engaged in the underwriting of IPO securities. (Exhibit B, paragraphs 19 through 46.) Plaintiffs essentially claim collusion among underwriters of IPOs as to underwriting fees, alleging that the defendants uniformly set underwriting fees at 7%. (Exhibit B, throughout.)

**Argument**

It is apparent from the Subpoena, together with its attachments, (Exhibit A, hereto) that the principal, if not sole, basis for the Subpoena is Mr. Cable's having publicly offered his generalized opinions relative to the IPO industry in a newspaper article in 2004 and in a professional trade journal in 2001. (Exhibits C and D to the Subpoena, respectively, the "articles".) It is further apparent that the reason Mr. Cable's opinions were sought by the publications in question is that he is a recognized practitioner with expertise in the IPO field. Mr. Cable has sworn that he has had no involvement, professionally or personally, with the named Plaintiffs in the underlying litigation including no involvement whatsoever in the IPO deals in which they participated. (Mr. Cable's affidavit is attached as Exhibit C hereto). Nothing in either the Subpoena or the Complaint contradicts this.

1. Plaintiffs may not Seek Disclosure of an Unretained Expert's Opinion or Information.

The nature of the documents requested in the Subpoena and the content of the articles attached as exhibits to the Subpoena make it obvious that the only reason Mr. Cable has been

2

targeted by the Plaintiffs for discovery is that he is a lawyer with recognized expertise in IPOs. The article attached as Exhibit C to the Subpoena makes this clear from the outset, recounting Mr. Cable's extensive experience in the field and setting forth his opinions as to what advice he thinks a hypothetical "IPO veteran" would give an equally hypothetical "recruit as he or she left for IPO boot camp." Expert though he may be in such matters, however, Mr. Cable has not been retained by any party in the underlying litigation.

Fed. R. Civ. P. 45(c)(3)(B)(ii) authorizes the Court to quash a subpoena directed to an unretained expert such as Mr. Cable, where a subpoena "requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party." This language was added to Rule 45 as part of the 1991 Amendments because of "a growing problem of the use of subpoenas to compel the giving of evidence and information by unretained experts and to provide appropriate protection for the intellectual property of the non-party witnesses." *Bio-Tech General Corp. v. Novo Nordisk*, 2003 U.S. Dist. LEXIS 7911, *8 (D. Del. 2003) (quoting *Schering Corp. v. Amgen Inc.*, 1998 U.S. Dist. LEXIS 13452, *6 (D. Del. 1998)) (internal quotations omitted). For Plaintiffs to overcome Mr. Cable's "right to withhold [his] expertise" they must make a showing of substantial need and undue hardship, commensurate with the last sentence of subparagraph (c)(3)(B) of Rule 45. *Id.* at *8-*9.

The nature of plaintiffs' claims makes such a showing impossible to make. Plaintiffs allege industry-wide collusion resulting in a uniform underwriting fee of 7% throughout the United States "for IPOs ranging in value from $20 million to $80 million." (Exhibit B, paragraph 4) They do not, however, allege facts or circumstances specific to any IPO deals in which Mr. Cable participated. If the Plaintiffs' allegations are true, surely any one of thousands

of lawyers and other professionals with experience in the securities industry can be retained to provide expert testimony as to the standards and practices in that industry. "In a technocratic society, knowledge is an extraordinarily valuable asset, and those who possess knowledge enter the marketplace to sell it to the highest bidder . . . In a society where knowledge is so valuable, there is something unfair about the courts permitting their processes, such as the issuance of a subpoena, to destroy that market in order to take for free the product of an individual's diligence, research, and expertise." *Statutory Committee of Unsecured Creditors v. Motorola*, 218 F.R.D. 325, 326 (D. DC 2003). In light of the foregoing, the Motion to Quash should be granted pursuant to Fed. R. Civ. P. 45(c)(3)(B)(ii) because the Subpoena impermissibly seeks to compel evidence and testimony of an unretained expert.

2. A Subpoena to a Nonparty Faces Higher Standards as to Burden and Relevance.

Fed. R. Civ. P. 26(c) provides that a Court can limit discovery (even as to relevant, discoverable evidence) by "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Similarly, Fed. R. Civ. P. 45(c)(3)(A)(iv) provides authority by which the Court may quash a subpoena that "subjects a person to undue burden." Where a subpoena is directed at a nonparty such as Mr. Cable, the burden of responding to the subpoena "is a factor entitled to special weight" in the Court's consideration of a motion to quash. *Heidleberg v. TKS*, 333 F.3d 38, 41-42 (1st Cir. 2003) (quoting from *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)). *See also, Paula Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (D. S.D.N.Y. 2003) ("Fed. R. Civ. P. 45(c) provides additional protection for non-parties subject to a subpoena" and "the 1991 amendments . . . enlarged the protections afforded persons who are required to assist the court by giving information or evidence . . . . [Subparagraph (iv)] requires the court to protect all persons from

undue burden imposed by the use of the subpoena power.") (internal citations and quotations omitted).

The burdens on Mr. Cable of complying with the subpoena are considerable. The subpoena essentially requires the production of documents that shaped the views expressed by Mr. Cable in the articles cited in the subpoena. Since Mr. Cable's views have been shaped by a quarter-century of practice in this area, the upshot may be a request for the files associated with all of the IPO transactions in which Mr. Cable has ever been involved. Even though most of these documents will be privileged (see the next section of this memorandum), the burden of calling those documents up, reviewing them for privilege, and logging them remains enormous.

The degree of relevance, if any, of the information sought by the Subpoena is a factor to be considered when assessing the burden imposed. *Nova Biomedical Corp. v. i-STAT Corp.,* 182 F.R.D. 419, 422-423 (S.D.N.Y. 1998). Mr. Cable has had no involvement in the transactions specific to the named Plaintiffs in the underlying litigation and as such, has no information directly relevant to the Plaintiffs' claims. To the extent Mr. Cable has generalized knowledge of the IPO industry as a whole, such knowledge is no more relevant than that possessed by thousands of other professionals in the field. Because Mr. Cable is a nonparty, the lack of relevance of the discovery sought by the Subpoena "has an important bearing upon the determination" and warrants the quashing of the Subpoena. *Compaq Computer Corp. v. Packard Bell Electronics,* 163 F.R.D. 329, 335-336 (N.D. Cal. 1995). "Obviously, if the sought-after [discovery is] not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon [the subpoenaed nonparty] would be by definition 'undue'." *Id.* (emphasis in original). Thus the Motion to Quash should be granted on the basis of lack of relevance and undue burden to nonparty Mr. Cable.

### 3. The Subpoena Should be Quashed due to Privilege, Confidentiality and Other Considerations.

The Subpoena should also be quashed on the grounds of privilege,[1] confidentiality and the rights of Mr. Cable under the First Amendment. Since Plaintiffs' interest in Mr. Cable's opinions stems from his broad experience as counsel to both IPO issuers and underwriters, the bases for those opinions has been privileged and confidential work he has performed while representing numerous clients over the years. Thus, even if Plaintiffs could show that Mr. Cable may have learned information of tangential relevance to the underlying case, it is clear that such information would be confidential and/or proprietary at the very least and protected by the attorney-client privilege in most instances. *See, e.g., Fort James Corp., v. Sweetheart Cup Co., Inc.,* 1998 U.S. Dist. LEXIS 15908, *5-*7 (S.D.N.Y. 1998).

Several conclusions follow from Mr. Cable's status as a person whose pertinent expertise flows from his experience as an attorney. First, as noted above, because of his unavoidable professional obligation to preserve the confidences and privileges of his clients, the burdens that he would face as a witness would be particularly onerous. He will have to consider whether a confidentiality obligation applies to every question posed and every document requested by the Plaintiffs. In some instances, a conscientious effort to resolve any uncertainty might require a consultation with the affected client. It is terribly unfair to compel any witness to undertake such a burden, particularly where the witness has no relationship whatever to the underlying controversy.

Second, because most if not all of the information that Plaintiffs seek will be privileged, the information that Plaintiffs will actually derive from compelling Mr. Cable to provide the

---

[1] While the Subpoena by its terms seeks only "non-privileged" material it also specifically commands compliance with the extensive requirements related to claims of privilege in SDNY Local Civil Rule 26.2. Note that subjecting Mr. Cable to the local Rules for the Southern District of New York is improper as the Subpoena was issued in the District of Massachusetts.

6

requested discovery will be vanishingly meager. The burdens on Mr. Cable provide a sufficient basis to quash the subpoena without regard to the corresponding benefits, but, because those benefits are evanescent at best, the decision to quash should be an easy one to make.

Additionally, the apparent basis for Plaintiffs' issuance of the Subpoena, namely Mr. Cable's public commentary as a recognized expert in professional publications, raises issues of First Amendment protections that serve as an additional basis for quashing the Subpoena. Moreover, several areas of inquiry specifically set forth in the Subpoena reinforce this point. Specifically, the Subpoena seeks discovery related to "testimony provided to any governmental agency or body, articles you have written or interviews you have given" as well as "seminars, lectures or professional meetings you have given or participated in." Courts have quashed or limited discovery based on First Amendment protections in several contexts. *See, e.g., Deitchman v. Squibb,* 740 F.2d 556, 560 (7th Cir. 1984) (recognizing that subpoenas to researchers are "capable of chilling the exercise of academic freedom"); *Wyoming v. U.S. Dept. of Agriculture,* 208 F.R.D. 449, 454-455 (D. DC 2002)(subpoena to nonparty quashed on First Amendment freedom of association concerns and recognizing several bases for same in various contexts); *USA v. McGoldrick,* 796 F.Supp. 178, 179 (E.D. PA 1992) (subpoena to nonparty "based on no more than an article she had written" quashed, in part on First Amendment grounds); *Matter of Consumers Union,* 1981 U.S. Dist. LEXIS 15203, *5 (S.D.N.Y. 1981) (recognizing protection for both "published or unpublished" materials).

Therefore, on any or all of the grounds of improper subpoena of an unretained expert, lack of relevance and undue burden to a nonparty and considerations of privilege, confidentiality

and First Amendment protections, Mr. Cable respectfully requests that the Motion to Quash be granted.

Dated: March 14, 2005                          Respectfully submitted,

_____
Henry C. Dinger (BBO #125340)
Stephen H. Townsend (BBO #637714)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617-570-1897

Attorneys for Stuart Cable

## LOCAL RULE 7.1(A)(2) and 37.1 CERTIFICATE and CERTIFICATE OF SERVICE

I, Stephen H. Townsend, hereby certify pursuant to Local Rule 7.1(A)(2) and 37.1 that I conferred in good faith via telephone (on March 9, 10 and 11, 2005) with David E. Kovel, Esquire, counsel for Plaintiffs, in an attempt to resolve or narrow the issues presented in this Motion to Quash. The parties were unable to reach any agreement on the issues raised herein.

_____
Stephen H. Townsend

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by [signature] March 14, 2005