UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MBD No. 05-10018

IN RE: PUBLIC OFFERING PLE
ANTITRUST LITIGATION

Case pending in District Court
for the Southern District of New York
00-CV-7804 (LMM)

Oral Argument Requested
Pursuant to L.R. 7.1(D)

# MEMORANDUM OF LAW IN SUPPORT OF STUART CABLE'S MOTION TO QUASH PLAINTIFFS' SECOND SUBPOENA AND FOR ATTORNEYS' FEES AND COSTS

## Introduction and Background

Stuart Cable, an attorney whose professional corporation is a partner in the Boston office of the law firm, Goodwin | Procter LLP, seeks to quash a non-party subpoena in an antitrust action on the grounds that he has had no involvement and has no information concerning the transaction involved in the underlying action and plaintiffs are seeking to compel expert testimony from an unretained expert in violation of Fed. R. Civ. P. 45 (c)(3)(B)(ii).

The underlying action, pending in the United States District Court for the Southern District of New York, is a purported class action brought by two corporations against more than two dozen underwriting firms. Plaintiffs allege that the underwriters conspired to fix fees for underwriting services in connection with initial public offerings (IPOs). Although they purport to bring their claim as a class action on behalf of a class of issuers in mid-sized IPOs, we understand that the district court in New York has not acted on plaintiffs' motion for class certification.

On or about February 28, 2005, plaintiffs in the underlying action ("plaintiffs") served a subpoena (the " First Subpoena") on Mr. Cable.  The First Subpoena sought both the production of documents and the deposition upon oral testimony of Mr. Cable pertaining to statements made by or attributed to Mr. Cable in two publications dealing with initial public offerings.  Mr. Cable has never represented either of the plaintiffs and none of the statements pertained to the plaintiffs or their IPOs but dealt generally with practices in the industry, in one case, and a recent IPOby the internet search company, Google.

Mr. Cable objected to the production of documents pursuant to Fed. R. Civ. P. 45(c)(2)(B) and brought a Motion to Quash the Subpoena (the "First Motion"), seeking to foreclose both the taking of Mr. Cable's deposition and the production of documents.  The First Motion was granted by Order of Magistrate Judge Dein, dated March 17, 2005 (the "Order" or "Judge Dein's Order," attached hereto as Exhibit A).

The plaintiffs subsequently filed an Objection to the Order (the "Objection") in response to which Mr. Cable filed an Opposition (the "Opposition").  Plaintiffs' Objection an Mr. Cable's Opposition thereto are currently pending before this Court.[1]

Despite the pendency of their Objection to Judge Dein's order, on or about March 29, 2005, plaintiffs served Mr. Cable with a new subpoena (the "Second Subpoena," attached hereto as Exhibit B) again seeking documents and the deposition of Mr. Cable.  Although the new subpoena only seeks production of documents on which Mr. Cable relied in preparing an article

---

[1] Due to Plaintiffs' multi-pronged attempt to obtain discovery from Mr. Cable, the Court has several pleadings on the record before it, including Mr. Cable's first Motion to Quash and his Opposition.  To avoid needless duplication, all of Mr. Cable's prior submissions, including the arguments therein and the attachments thereto, are incorporated herein by reference.

published in a trade publication, *IPO Journal*[2] plaintiffs continue to seek his testimony

concerning customary practices in the underwriting field unrelated to the plaintiffs' own IPOs.

Mr. Cable has objected to the Second Subpoena pursuant to Rule 45(c)(2)(B) (Exhibit C hereto)

and now moves to quash the Second Subpoena in all respects.

In quashing the First Subpoena, Judge Dein found that plaintiffs did "not put forth any

evidence that [Mr. Cable] was in any way involved with, or has any factual information about,

*the transactions at issue in this litigation.*" (Order, Exhibit A, at ¶ 1) (emphasis added). This

remains the case. We understand that nothing has occurred in the underlying litigation since the

Order issued (including, specifically, no class certification) which would alter the meaning of the

term "transactions at issue." Judge Dein also found that plaintiffs' attempted discovery was

"precluded by Fed. R. Civ. P. 45(c)(2)(B)(ii)" because Plaintiffs sought "disclosure of an

unretained expert's [i.e., Mr. Cable's] opinion or information not describing specific events or

occurrences in dispute and resulting from the expert's study made not at the request of any

party". (Order at ¶ 2) (internal quotations omitted).

Since Mr. Cable still has no factual information concerning the transaction at issue in this case

and since plaintiffs still seek expert testimony from an unretained expert, Mr. Cable's Motion to

Quash the Second Subpoena should be granted. In the alternative, the Motion to Quash should

be granted on any of the grounds set forth in Mr. Cable's First Motion to Quash Plaintiffs First

Subpoena.

---

[2] The original subpoena sought, inter alia, all documents concerning the pricing of underwriting services in any IPO,
a request that would in theory require Mr. Cable to review the files of every IPO on which he has ever worked
in an active securities practice of nearly 25 years.

**Argument**

**1. Plaintiffs may not seek disclosure of an unretained expert's opinion or information.**

Judge Dein found plaintiffs' First Subpoena to be improper under Fed. R. Civ. P. 45(c)(3)(B)(ii) which authorizes the Court to quash a subpoena that "requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party." This language was added to Rule 45 as part of the 1991 Amendments because of "a growing problem of the use of subpoenas to compel the giving of evidence and information by unretained experts and to provide appropriate protection for the intellectual property of the non-party witnesses." *Bio-Tech General Corp. v. Novo Nordisk,* 2003 U.S. Dist. LEXIS 7911, *8 (D. Del. 2003) (quoting *Schering Corp. v. Amgen Inc.,* 1998 U.S. Dist. LEXIS 13452, *6 (D. Del. 1998)) (internal quotations omitted).

The rule applies to protect a prospective witness whose testimony derives from his or her expertise, unless the party seeking discovery seeks "information … describing specific events or occurrences in dispute," and the expert's information does not derive from study undertaken at the request of a party to the litigation. *See Statutory Committee of Unsecured Creditors v Motorola,* 218 F.R.D. 325, 326 (D.D.C. 2003). Unless and until a class is certified *and* the class is defined to include former IPO clients of Mr. Cable *and* such clients choose not to opt-out of the class, there is no doubt that Mr. Cable continues to not have information related to "the transactions at issue" or the "specific events or occurrences in dispute." Given Mr. Cable's lack of any information pertinent to the plaintiffs' own IPOs, the only conceivable reason for seeking his deposition is to garner evidence concerning general industry practice. This is precisely what

4

lawyers retain experts to obtain. Plaintiffs should not be permitted to get it on the cheap by compulsory process.

### 2. Compliance with the Subpoena would impose "undue burden" on Mr. Cable.

Rule 45(c)(3)(A)(iv) directs the Court to quash a subpoena that "subjects a person to undue burden." In terms of the documents requested, the Second Subpoena asks for materials which do not exist (See Affidavit of Stuart Cable In Support of Objection Pursuant to Fed. R. Civ. P. 45(c)(2)(B) to Plaintiffs' Second Subpoena, Exhibit C to Exhibit A hereto). However, in seeking Mr. Cable's deposition related to pricing of IPOs generally, plaintiffs are seeking Mr. Cable's testimony related to every IPO on which he has ever worked over the past quarter century for documents addressing underwriting fees.

The testimony that plaintiffs seek would be unduly burdensome because while it is one thing for an experienced lawyer to share the general impressions formed as a result of his or her experience, it is quite another for Mr. Cable to attempt to recall the specific incidents that have informed his judgment. He will of necessity again be faced with the difficult task of sorting through whether or not he would be violating his obligation to protect privileged and confidential information concerning such information. It is unreasonable to compel Mr. Cable (and his law firm which shares his ethical responsibility to his present and former clients and will assist Mr. Cable in resolving those issues) to go through that process.

It is particularly unreasonable to compel him to do so when class certification in plaintiffs' action remains unresolved. If a class is certified, and one of Mr. Cable's IPO clients is a member of the class and elects not to opt out, then plaintiffs can request that such a company agree to waive any privilege to permit Mr. Cable or any other lawyer to disclose freely

information pertaining to the transaction. But until these issues are resolved, the burdens of complying with plaintiffs' subpoena are significant and potentially a complete waste of time.

Where a subpoena is directed at a nonparty such as Mr. Cable, the burden of responding to the subpoena "is a factor entitled to special weight" in the Court's consideration of a motion to quash. *Heidleberg v. TKS,* 333 F.3d 38, 41-42 (1st Cir. 2003) (quoting from *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998)). *See also, Paula Jones v. Hirschfeld,* 219 F.R.D. 71, 74 (D. S.D.N.Y. 2003) ("Fed. R. Civ. P. 45(c) provides additional protection for non-parties subject to a subpoena" and "the 1991 amendments . . . enlarged the protections afforded persons who are required to assist the court by giving information or evidence . . .. [Subparagraph (iv)] requires the court to protect all persons from undue burden imposed by the use of the subpoena power.") (internal citations and quotations omitted). The burdens on Mr. Cable of complying with the subpoena are considerable, since Mr. Cable's views have been shaped by a quarter-century of practice in this area. Thus the Motion to Quash should be granted on the basis of undue burden.

**Conclusion**

For the foregoing reasons and those set forth in his previous filings in this matter, Mr.

Cable respectfully requests that the Motion to Quash be granted.


Dated:  April 20, 2005                                        Respectfully submitted,


                                                            _/s/_____
                                                            Henry C. Dinger (BBO #125340)
                                                            Stephen H. Townsend (BBO #637714)
                                                            GOODWIN PROCTER LLP
                                                            Exchange Place
                                                            Boston, MA  02109-2881
                                                            617-570-1897

                                                            Attorneys for Stuart Cable



## LOCAL RULE 7.1(A)(2) and 37.1 CERTIFICATE and CERTIFICATE OF SERVICE


I, Stephen H. Townsend, hereby certify pursuant to Local Rule 7.1(A)(2) and 37.1 that I
conferred in good faith via telephone with David E. Kovel, Esquire, counsel for Plaintiffs, in an
attempt to resolve or narrow the issues presented in this Motion to Quash.  The parties were
unable to reach any agreement on the issues raised herein.


                                                    _/s/_____
                                                    Stephen H. Townsend

I, Stephen H. Townsend, hereby certify that a true copy of the above document was
served upon attorney David E. Kovel, counsel for Plaintiffs, at Kirby McInerney & Squire, LLP,
830 Third Avenue, New York, NY 10022 via facsimile and overnight mail on April 20, 2005.

_see Exhibits_              _/s/_____
                            Stephen H. Townsend

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: PUBLIC OFFERING PLE ANTITRUST LITIGATION | ) ) ) ) | MBD NO. 05-10018-PBS |

## ORDER ON MOTION TO QUASH

After a telephone conference with counsel, the Motion to Quash (Docket No. 1) is allowed, without prejudice.  The plaintiffs have not put forth any evidence that the proposed deponent, Attorney Stuart Cable, was in any way involved with, or has any factual information about, the transactions at issue in this litigation.  The most the plaintiffs have to offer is the argument that it is statistically likely, given the breadth of Attorney Cable's experience representing issuers and underwriters in initial public offerings ("IPOs"), and the number of IPOs at issue, that he has some non-privileged factual information.  However, Attorney Cable has filed an affidavit stating that he has "had no involvement, professionally or personally, with the named Plaintiffs in the underlying litigation, including no involvement whatsoever in any IPO deals in which they participated."

The record presently before the court leads to the conclusion that the plaintiffs are seeking "disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party," which is precluded by Fed. R. Civ. P. 45(c)(2)(B)(ii). See

Statutory Comm. of Unsecured Creditors v. Motorola, Inc., 218 F.R.D. 325, 326 (D.D.C. 2003) (Fed. R. Civ. P. 45(c)(3)(B)(ii) protects individuals from subpoenas seeking "to take for free the product of an individual's diligence, research, and expertise," as long as the individual's information "does not describe events or occurrences in dispute."). Consequently, the motion to quash is allowed. The subpoena may be renewed upon a more detailed showing that the plaintiffs are seeking to depose Attorney Cable as a fact witness to "specific events or occurrences in dispute."

Attorney Cable's request for fees and costs is denied.

                                        / s / Judith Gail Dein
                                        Judith Gail Dein
                                        United States Magistrate Judge
DATED:  March 17, 2005

-2-

# EXHIBIT B

AO 88 (Rev. 11/91) Subpoena in a Civil Case

# United States District Court
## District of Massachusetts

IN RE PUBLIC OFFERING FEE
ANTITRUST LITIGATION

**SUBPOENA IN A
CIVIL CASE**
Case Pending in District Court
for the Southern District of New York
00-CV-7804 (LMM)

To:  Mr. Stuart M. Cable
    Goodwin Procter LLP
    Exchange Place
    Boston, Massachusetts  02109

■ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| GRIESINGER, TIGHE & MAFFEI LLP<br>176 Federal Street<br>Boston, Massachusetts  02110 | April 21, 2005<br>10:00 a.m. |

■ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

   See Schedule A

| | DATE AND TIME |
|---|---|
| GRIESINGER, TIGHE & MAFFEI LLP<br>176 Federal Street<br>Boston, Massachusetts  02110 | April 18, 2005<br>1:00 p.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed.R.Civ.P. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _(signature)_ , Attorney for Plaintiff | March 29, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

David E. Kovel, Esq., Kirby McInerney & Squire, LLP.
830 Third Avenue, 10th floor, New York, New York 10022 (212) 371-6600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

Case 1:05-cv-10747-WGY    Document 10    Filed 04/20/2005    Page 13 of 15

AO 88 (11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |
| SERVED ON (PRINT NAME) |  | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) |  | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

_____

Rule 45, Fed.R.Civ.P., Parts C & D:

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents, or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection has been made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B)    If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.  The terms and procedure set forth in Rule 34 of the Federal Rules of Civil Procedure and the Uniform Definitions in Discovery Requests set forth in Rule 26.3 of the Civil Rules of the United States District Court for the Southern District of New York are incorporated herein by reference and attached as **Exhibit A**.

2.  "Underwriting fee" - means the compensation paid or contemplated for payment to underwriters in connection with the underwriting of securities.

3.  If any document is withheld from production pursuant to any claim of privilege or work product, you shall comply with the requirements of Rule 26.2 of the Civil Rules of the United States District Court for the Southern District of New York, attached as **Exhibit B**.

4.  This is a continuing request for production of documents. If, after making your initial production, you obtain or become aware of any further document(s) responsive to this request, you are required to promptly produce such additional document(s) to plaintiffs.

5.  Documents are to be produced in full, without redaction. If any requested document cannot be produced in full, produce it to the extent possible, indicating which documents, or portion of that documents, is being withheld, and the reason that documents or portion is being withheld.

## TIME PERIOD

The relevant time period of documents requested pursuant to this subpoena shall be from November 4, 1994 to the present, and shall include all documents which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## DOCUMENTS REQUESTED

1.   All non-privileged documents or communications considered by you in making the factual assertions in the IPO Journal, Vol. 4, No. 11, November 2001, pages 11-13 (attached as **Exhibit C**) that an issuer of common stock pays a "fixed price (7% of gross)" for underwriting fees and that "the deal between [the issuer] and the banker is non-negotiable (7% of gross)."

2

# EXHIBIT A

made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.

(b)  Where a claim of privilege is asserted during a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished (1) at the deposition, to the extent it is readily available from the witness being deposed or otherwise, and (2) to the extent the information is not readily available at the deposition, in writing within ten business days after the deposition session at which the privilege is asserted, unless otherwise ordered by the court.

(c)  Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the court.

[Source:  Former Local Civil Rule 46(e)(2) (Southern District Only); Eastern District Standing Order 21]

## Local Civil Rule 26.3.  Uniform Definitions in Discovery Requests

(a)  The full text of the definitions and rules of construction set forth in paragraphs (c) and (d) is deemed incorporated by reference into all discovery requests.  No discovery request shall use broader definitions or rules of construction than those set forth in paragraphs (c) and (d).  This rule shall not preclude (1) the definition of other terms specific to the particular litigation, (2) the use of abbreviations, or (3) a more narrow definition of a term defined in paragraph (c).

(b) This rule is not intended to broaden or narrow the scope of discovery permitted by the Federal Rules of Civil Procedure.

(c) The following definitions apply to all discovery requests:

(1) **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2) **Document.** The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

(3) **Identify (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(4) **Identify (with respect to documents).** When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(5) **Parties.** The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This

definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) **Person.** The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7) **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(d) The following rules of construction apply to all discovery requests:

(1) **All/Each.** The terms "all" and "each" shall be construed as all and each.

(2) **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

(3) **Number.** The use of the singular form of any word includes the plural and vice versa.

[Source: Former Local Civil Rule 47]


**Local Civil Rule 26.4. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure 26 (Southern District Only) - Repealed December 1, 2000**


**Local Civil Rule 26.5. Cooperation Among Counsel in Discovery (Eastern District Only)**

Counsel are expected to cooperate with each other, consistent with the interests of their

# EXHIBIT B

statement shall include the post office address and residence of the original owner of the claim and of any assignee.

[Source: Former Local Civil Rule 2]

## Local Civil Rule 26.2. Assertion of Claim of Privilege

(a) Where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion,

(1) The attorney asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(2) The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A) For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

(B) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was

# EXHIBIT C

*Reprinted from:*



# IPO JOURNAL

## TRENDS AND TECHNIQUES FOR THE IPO PROFESSIONAL

Designed and published monthly by Bowne & Co., the world's largest financial printer, and written by the staff of Corporate Finance Institute, Inc. IPO Journal is a joint venture of Bowne Publishing Division and Corporate Finance Institute (Melissa M. Pierkowski, Executive Editor; Graeme K. Howard, Jr., Editor; David C. Glover, Research Editor; James G. Keffer, Research Associate; Carlton J. Hughes, Research Associate; Kristin L. Beane, Research Associate).

Send subscription requests and address changes to Director of Publications, Bowne, 345 Hudson Street, New York, NY 10014, Tel: (212) 229-7233; Fax: (212) 229-3421; Email: pubs@bowne.com. Send editorial questions or comments to Nancy J.F. Short, Editor, Bowne Publishing Division; Tel: (212) 229-7337; Fax: (212) 229-3421; Email: nancy.short@bowne.com or to Graeme K. Howard, Jr., Editor, IPO Journal, Tel: (410) 810-3731; Fax: (410) 810-3734; Email: ghoward@ipojournal.com.

The Bowne catalog is available by calling (800) 370-8402 or on the Internet at http://www.bowne.com. The IPO Journal may not be reproduced, transmitted or stored in whole or in part in any form without the written consent of Bowne and of the Corporate Finance Institute. ©2001 Corporate Finance Institute. Design and layout ©2001 Bowne. All information is from sources believed to be reliable; however, accuracy cannot be guaranteed. No data or statement herein should be construed to be a recommendation for the purchase, retention or sale of any security and no information or opinion in this publication constitutes a solicitation or recommendation for the purchase or sale of any security. This publication is distributed with the understanding that neither the publisher nor Corporate Finance Institute is engaged in rendering legal, accounting or investment services. Information contained herein has been provided solely by the staff of Corporate Finance Institute from sources believed to be reliable. No information contained herein has been independently verified by Bowne & Co.



*Stuart Cable of Goodwin Procter:*
# Top Ten To-Do's for CEOs of the Next New Thing



**Stuart Cable**, *a partner in* **Goodwin Procter**'s *Corporate Department, represents a wide array of public and private companies involved in diverse businesses, including those involving life sciences, optical components, semiconductors, professional services, alternative energy, and software. Cable has served as chair of Goodwin Procter's Corporate Department (1991-1995), and on the firm's Executive Committee (1996-1998), and Allocations Committee (1995-2000). Cable's specific transactional experience includes initial and other public offering transactions, representing both issuers and underwriters; strategic acquisitions; and private placements of equity and debt. Cable received his J.D. from Columbia Law School, 1979; his M.B.A. from Amos Tuck School of Business Administration at Dartmouth College, 1976; and his A.B. from Dartmouth College, 1975 magna cum laude.*

*What is the profile of* **Goodwin Procter**?
Cable: "We are one of the nation's leading law firms, with full service corporate and litigation practices and a team of 500 attorneys. We are headquartered in Boston, with offices in New York, New Jersey and Washington, D.C. We serve clients across a broad range of industries, providing creative solutions to complex problems and coupling practical legal advice with proactive strategic counsel."

*What is your IPO experience?*
Cable: "Serving as counsel to issuers, I have assisted a number of East Coast technology, telecommunications, and life sciences companies with their offerings, including **Albany Molecular Research, Digitas, Plug Power, Clare, Moldflow, Cognicase, Mac-Gray, StockerYale** and **Merkert American**. On the underwriter side, the investment banks I am frequently asked to represent in IPOs include **Salomon Smith Barney, U.S. Bancorp Piper Jaffray,** and **First Albany**."

*What advice do you think the CEO of a 1998 Internet IPO that subsequently failed would have for the CEO of a company now planning to go public in the hoped-for turnaround in the IPO market?*
Cable: "I believe that a defrocked IPO veteran would tell the next generation about to enter the front lines of going public to keep his or her eye on the most important factors in the IPO process, and to avoid getting caught up in the morass of IPO detail. Here are the top ten tips I believe the veteran of going public would give the recruit as he or she left for IPO boot camp.

1. *Selecting the Investment Bankers.* Do not overcomplicate, drag out, or procrastinate making this decision. Warm them up privately in your offices with a two-hour management presentation. Include supporting historical and projected quarterly numbers and a detailed description of the size, growth rate, and competitive dynamics of the market for your products. Make your senior management team participate fully in the presentation. Invite the interested and qualified investment banks (six to eight total) to present their capabilities at a one-day 'bake-off' two weeks after the management presentations. Your key private equity investors and all Directors should be invited to attend the bake-off and to offer input into the decision. The decision should, however, ultimately be the CEO's to make. Any qualified banker suggested by an investor or Director should be invited, but the self-interest of the proponent should be carefully weighed.

Consider carefully only limited factors when making your decision, including
  i.   the reputation, track record, tenure, market presence, knowledge, and enthusiasm of the analyst (this will require external research and reference checks);
  ii.  the analyst's perspective on valuation and comparable companies (an offering is priced at the back-end, and no binding valuation exists between you and the underwriter until the shares are effectively placed. Still, a discussion of the comparable companies and respective valuations will help you triangulate on an appropriate valuation); and
  iii. the reputation of the analyst for integrity and his or her ranking in the Wall Street tables. (You are known by the company you keep. In short, if a bulge bracket firm is prepared to lead manage your IPO, go for it.)

Conversely, the long laundry list of factors regularly pitched by investment bankers should not generally be determinative of your selection of bankers. Usually on the pitch list:
  i.   after market support (each will provide after market support if, and only if, it is in their economic interest to do so);
  ii.  M&A services (you can always hire a different banker to run a discrete M&A project); and
  iii. access to institutional investors (in general, all high-end bankers have comparable access to the same institutional buyers).

Subject to size and your ability to attract a high-end lead underwriter, it is preferable to have more banks on your cover than fewer (optimally four, three for smaller deals, and two for the smallest deals). You pay a fixed price (7% of gross) and coverage by three analysts is generally preferable to coverage by two.

*(...page 12)*

("Stuart Cable of Goodwin Procter" **Continued from page 11**)

2. *Cutting the Economic Deal Among Your Bankers.* The deal between you and the bankers is non-negotiable (7% of the gross). The size of the deal will be estimated on the front end ($40 million practical minimum) but finally determined on the back-end as part of the pricing. In sizing your deal, consider your need for capital, your access to complementary debt financing, and most importantly, your need to understand that equity markets are not always open. Make certain that the economics *among* underwriters are negotiated up-front and prior to the 'kick-off' meeting. You cannot leave it up to them; absent your strong hand, greed precludes consensus. Solicit their input and their walk-away point and then you need to tell them the split. You need to consider 'jump ball' versus 'pre-split economics' and combinations thereof. Make sure the economics to be paid to your lead manager are adequate to attract the high-end name, yet at the same time, don't squeeze the banker on the right to the point where he won't participate or will be unmotivated.

3. *Selecting the Professionals.* Pick a corporate lawyer who
   i. has done it many times before, representing both issuers and underwriters,
   ii. understands your business, and
   iii. can relate to you as a 'consigliore.'

If your start-up counsel doesn't fit the bill, give him or her a transitional role but make clear who is boss. On the accounting side, if you have a 'Big 5' firm, stay with them, but consider carefully whether you have the right team from that firm. If you don't have a Big 5 firm, switch to one unless timing precludes it. Do not involve yourself in selecting other service providers (e.g., transfer agent). Let your CFO do his job.

4. *Positioning the Company ("The Investment Thesis").* The drafting process typically involves five or six full-day 'all hands' sessions to write (and rewrite and rewrite the rewrite of) the prospectus. Attend the first and perhaps the second session, and then let the cast of thousands fine tune and complete the book. Your focus should be exclusively on the 'Business' section and specifically on the subsections entitled 'Industry Background', 'The Company's Solution' and 'Strategy'. Spend 90% of your time focused on the positioning of the company's solution and strategy as set forth in these two pages of the 60-page book. Has the industry background section been structured to set up a straw man that your solution will knock down? Is the strategy section truly forward looking and persuasive in communicating a competitive advantage? Listen to your bankers, listen to your corporate lawyer, but ultimately you must decide whether the investment thesis in these two pages is both honest and captivating.

5. *Motivating the Team.* Understand the motivating forces and golden handcuff imperatives inherent in granting stock options. Design a generous program (within the bounds of the 'cheap stock' concerns) that puts a bounce in your team's step. Consider grants throughout the company. Push your Board to be aggressive on this front, and consider the views of your CFO, your corporate lawyer, and your managing underwriter on the frequently competing concerns of dilution, incentive compensation, and cheap stock earnings charges. Do not spend any time on plan design (all omnibus plans are essentially the same); spend all of your time designing and communicating the pre-IPO grants.

6. *Selecting the Independent Directors.* You need a minimum of three. Don't overweight the 'prestige' factor, rather, pick three people who can help you in your business: (i) if you have a limited background in accounting and finance, select a financial type who can chair your Audit Committee; (ii) a Wall Street expert who can decipher the street for you; and (iii) an industry veteran (non-competitive) or expert who can fathom the trends in your business and/or technology. Motivate them well with a combination of both cash and options.

7. *Preparing for the Road.* Investment bankers don't sell securities to institutions. Prospectuses don't sell securities to institutions. CEOs sell securities to institutions based on the investor's perception of the CEO's passion, his vision, his commitment, and his integrity. Given your background, this pitch will take some work. Don't be cocky about your ability to sell. Listen to your bankers. Hire a communications expert to help you with your style. Practice in front of your corporate lawyer, your bankers, your management team, your best friend, and your spouse. Don't oversell. You will have five or six weeks after the SEC filing and before the commencement of the road show to hone your presentation.

8. *Pricing Your Deal.* The IPO process was designed by underwriters for underwriters. You will not have a meaningful opportunity to negotiate so do not delude yourself on this front. The managing underwriter (without dissent from his co-managers) will present you with the results of their order book - a *fait accompli* as to pricing with perhaps a modest decision as to sizing. For obvious reasons, the bankers will almost always recommend the larger deal. If there is excess demand, your private equity investor may be accommodated as a selling shareholder in the green shoe. Don't fight that suggestion as the added float will only help your trading.

9. *Don't Do Other People's Jobs.* Don't write the prospectus. That is the job of your corporate lawyer. Don't play with the financial statements. That is the job of your CFO. Don't write the press releases. That is the job of your CFO and IR people. Don't immerse yourself in the politics of the Friends and Family program. You will go mad. Don't even ask what is in the underwriting agreement. You won't understand it, and even if you can understand it, it is, for all practical purposes, non-negotiable.

(...page 13)

("Stuart Cable of Goodwin Procter" *Continued from page 12)*

10. *Run Your Company.* The most important advice of all – focus continually on running your company. Push the people, push the operation, push the strategy. An IPO is not a liquidity event; it is a starting point on the road to liquidity. You may or may not succeed in going out before the apparent IPO window closes. If you don't, you need to perform to attract the next round of private equity. If you do, the value of your stock certificate will depend over the long term less on the vagaries of the market, and more on your ability to implement your vision. In short, the ultimate destiny of your company and its stockholders (including employees) will depend not on how well you manage the IPO process, but on how well you manage the company." ■

Comments to jkeffer@ipojournal.com and ghoward@ipojournal.com

Designed and published monthly by Bowne & Co., the world's largest financial printer, and written by the staff of Corporate Finance Institute, Inc. IPO Journal is a joint venture of Bowne Publishing Division and Corporate Finance Institute (Melissa M. Pierkowski, Executive Editor; Graeme K. Howard, Jr., Editor; David C. Glover, Research Editor; James G. Keffer, Research Associate; Carlton J. Hughes, Research Associate; Kristin L. Beane, Research Associate).

Send subscription requests and address changes to Director of Publications, Bowne, 345 Hudson Street, New York, NY 10014; Tel: (212) 229-7233; Fax: (212) 229-3421; Email: pubs@bowne.com. Send editorial questions or comments to Nancy J.F. Short, Editor, Bowne Publishing Division; Tel: (212) 229-7337; Fax: (212) 229-3421; Email: nancy.short@bowne.com or to Graeme K. Howard, Jr., Editor, IPO Journal; Tel: (410) 810-3731; Fax: (410) 810-3734; Email: ghoward@ipojournal.com.

The Bowne catalog is available by calling (800) 370-8402 or on the Internet at http://www.bowne.com. The IPO Journal may not be reproduced, transmitted or stored in whole or in part in any form without the written consent of Bowne and of the Corporate Finance Institute. ©2001 Corporate Finance Institute. Design and layout ©2001 Bowne. All information is from sources believed to be reliable; however, accuracy cannot be guaranteed. No data or statement herein should be construed to be a recommendation for the purchase, retention or sale of any security and no information or opinion in this publication constitutes a solicitation or recommendation for the purchase or sale of any security. This publication is distributed with the understanding that neither the publisher nor Corporate Finance Institute is engaged in rendering legal, accounting or investment services.Information contained herein has been provided solely by the staff of Corporate Finance Institute from sources believed to be reliable. No information contained herein has been independently verified by Bowne & Co.

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MBD No. 05-10018

IN RE: PUBLIC OFFERING PLE
ANTITRUST LITIGATION

Case pending in District Court
for the Southern District of New York
00-CV-7804 (LMM)

## OBJECTION PURSUANT TO Fed. R. Civ. P. 45(c)(2)(B).
## TO PLAINTIFFS' SECOND SUBPOENA TO STUART CABLE

Non-party, Stuart Cable, ("Mr. Cable") is in receipt of a subpoena issued by David E.

Kovel, Esq. of the firm of Kirby McInerney & Squire, LLP dated March 29, 2005(the "Second

Subpoena") that seeks the production of a certain category of documents. Pursuant to Fed. R.

Civ. P. 45(c)(2)(B), Mr. Cable objects to the Second Subpoena as not reasonably calculated to

lead to the discovery of admissible evidence given the present posture of the underlying

litigation. Furthermore, Mr. Cable states that he has no documents which are responsive to the

Second Subpoena. (See Affidavit of Stuart Cable In Support of Objection Pursuant to Fed. R.

Civ. P. 45(c)(2)(B) to Plaintiffs' Second Subpoena, attached hereto as, Exhibit A).

The Second Subpoena is further objected to on the grounds that it violates Magistrate

Judge Dein's Order on Motion to Quash, dated March 17, 2005, a copy of which is attached as

Exhibit B.

Dated: April 11, 2005

Respectfully submitted,

Henry C. Dinger (BBO #125340)
Stephen H. Townsend (BBO #637714)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617-570-1897
Attorneys for Stuart Cable

CERTIFICATE OF SERVICE

I hereby certify that a true copy of
the above document was served upon the
attorney(s) of record for each other
party by(mail)/hand on      4/11/05     .

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MBD No. 05-10018

IN RE: PUBLIC OFFERING PLE
ANTITRUST LITIGATION

Case pending in District Court
for the Southern District of New York
00-CV-7804 (LMM)

## AFFIDAVIT OF STUART CABLE IN SUPPORT OF OBJECTION PURSUANT TO Fed. R. Civ. P. 45(c)(2)(B) TO PLAINTIFFS' SECOND SUBPOENA

I, Stuart M. Cable, on my oath depose and say:

1.      I am a member in good standing of the bar of the Commonwealth of Massachusetts and the professional corporation of which I am principal is a Partner of the firm Goodwin | Procter LLP.  I submit this affidavit in support of the accompanying Objection Pursuant to Fed. R. Civ. P. 45(c)(2)(B) to Plaintiffs' Second Subpoena.

2.      I am in receipt of a second subpoena (the " Second Subpoena") issued by the Plaintiffs ("Plaintiffs") in the above captioned action pending in the District Court for the Southern District of New York (the "underlying litigation").

3.      The Second Subpoena seeks "documents or communications considered by [me]" in connection with two statements that I made in an article published in an industry trade journal in 2001, a copy of which is attached to the subpoena.

4.      I do not recall considering any documents in connection with those statements, and I have no files associated with the article in question.

5.      Rather, I made those statements based on my experience as a lawyer with approximately 25 years of practice in the corporate and securities field.

Signed under the pains and penalties of perjury this 11th day of April, 2005.

Stuart M. Cable, PC

Dated: April 11, 2005