UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PUBLIC OFFERING PLE ANTITRUST LITIGATION | Civil Action No. 05-10747-WGY<br><br>Case pending in District Court for the Southern District of New York<br>00 CV-7804 (LMM)<br><br>Oral Argument Requested Pursuant to L.R. 7.1D |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
STUART CABLES MOTION TO QUASH
PLAINTIFFS' SUBPOENA**

**INTRODUCTION**

On March 28, 2005, plaintiffs filed their objection to the order attached to

the accompanying Kovel Affidavit as Exhibit A.   The memorandum supporting that

objection is Exhibit B to the Kovel Affidavit.  The same memorandum asks the court[1] to

stay its hand pending further efforts by the parties to resolve their disagreement.

On March 29, 2005 plaintiffs served a renewed subpoena on Stuart Cable.

It required Mr. Cable to produce on April 18, 2005 all fact documents related to his

public statements and sit for a deposition on April 21, 2005.  On April 20, 2005, in the

---

[1]     Originally before Judge Saris, the case has since been transferred to the Judge Young.

late afternoon, Mr. Cable filed a second motion to quash.[2]

The determinative feature of this dispute is that the witness has knowledge of facts central to the antitrust conspiracy that lies at the heart of plaintiffs' action, whether brought individually, or on a class-wide basis.

From 1995 to 1997, 95% of the initial public offerings ("IPOs") between $20 million and $80 million carried fixed and non-negotiable underwriting fees of 7%. See plaintiffs' complaint, ¶16, attached to the Kovel Affidavit as Exhibit C.[3] The district court for the Southern District of New York and the Second Circuit have both sustained the allegations in the complaint that a price-fixing conspiracy exists in the market for IPO underwriting fees. *See In re Public Offering Fee Antitrust Litigation*, 2002 WL 31819597 (2d Cir. 2002) and *In re Public Offering Fee Antitrust Litigation*, 2004 WL 350696 (S.D.N.Y. 2004). The allegations also find obvious support in an NASD censure of one of the defendants herein. Discovery is in full swing; class certification papers will have been fully submitted by about June 1, 2005.

The discovery sought by the plaintiffs' subpoenas derives from a widely published article/promotional advertisement in the *IPO Journal* (the "Cable article"), which also appears on the website of Goodwin Procter LLP.[4] In this article, Stuart Cable,

---

[2]    Plaintiffs refer this Court to the previous filings relating to this and the prior subpoena, including plaintiffs' first memorandum in opposition to Mr. Cable's motion to quash, which is incorporated herein by reference.  Mr. Cable's untimely service here follows problematic service of the previous motion to quash.  See Kovel Affidavit, ¶4.

[3]    The class period is 1994 to the present.

[4]    *See IPO Journal*, "Top Ten To-Do's for CEOs of the Next New Thing," Vol. 4, No. 11, November 2001,

a partner of Goodwin Procter, LLP, states *as a matter of fact* that the underwriting fees IPO issuers pay to financial intermediaries are "fixed" at 7% and are "non-negotiable." *See* Cable article, pages 11-12. The Cable article also lists eight IPOs in which Mr. Cable has represented issuers. Six of the transactions identified by Mr. Cable do fall within the price-fixed profile of the complaint. *See* Kovel Aff., ¶3. In seven of those IPOs, the underwriter was a defendant in this case. *See id.* Thus, it is reasonably likely, at the least, that Mr. Cable has borne witness to transactional instances fitting this case's conspiracy profile where the fixed fees complained of have been imposed, and that these observations contributed to his voluntary public remarks that fees are "fixed" at 7% and are "non-negotiable." He has demonstrably been involved in transactions at issue in this litigation. He is the paradigmatic fact witness.

In late February plaintiffs served a subpoena on Mr. Cable requesting documents and a deposition, noticed for March 17, 2005. *See* plaintiffs' subpoena of Stuart Cable, attached as Exhibit D to the Kovel Affidavit.[5] On March 14, 2005, Mr. Cable filed an emergency motion to quash the subpoena on the grounds that: (i) the subpoena sought expert testimony, (ii) Mr. Cable had not worked with either of the

---

pages 11-13 ; *see also* http://www.goodwinprocter.com/pubindex.asp?paID=8. The Cable article is Exhibit C of the subpoena. The subpoena is attached to the Kovel Affidavit as Exhibit D.

[5]    Mr. Cable writes that through the subpoena plaintiffs seek "his testimony concerning customary practices in the underwriting field unrelated to the plaintiffs' own IPO's". Cable motion at 3. They do not. They seek facts undergirding the witness's factual assertions that fees are "fixed" and "non-negotiable" at 7%. And again, as these plaintiffs need to establish conspiracy among defendants to satisfy their individual causes, all IPO's that conform to the plaintiffs' asserted IPO profile are relevant. At least six issuers identified by Mr. Cable fit the profile of the conspiracy's target population, including plaintiffs, and the underwriters in those IPO's are defendants here. *See* Kovel Aff., ¶3.

plaintiffs in the underlying case (as opposed to other similarly situated issuers); (iii) the subpoena was burdensome, (iv) the subpoena sought privileged material, and (v) the subpoena violated the first amendment of the United States Constitution.  Mr. Cable reiterates or adopts these arguments in the current motion.

On March 17, 2005, Magistrate Judge Dein entered the order on motion to quash.  Kovel Aff., Exh. A.  That order granted Mr. Cable's motion to quash the subpoena.  The order also stated that, "the subpoena may be renewed upon a more detailed showing that the plaintiffs are seeking to depose attorney Cable as a fact witness to 'specific events or occurrences in dispute'".  Order at 2, Kovel Aff., Exh. A.

The fulcrum point is worth immediate emphasis: plaintiffs are not seeking any expertise from the witness, just facts.  This action complains that underwriters fix their IPO fees at 7%.  Mr. Cable has advertised that he has represented issuers, and asserted *factual knowledge* that 7% fees are "fixed" and "non-negotiable".  Of the 8 issuers identified by Mr. Cable, 6 fit the profile of the plaintiffs as individuals and putative class members.  Kovel Aff., ¶3.  Seven of those issuers engaged underwriters who are defendants in this case. *See Ibid*.  It is therefore necessary, much less reasonable, to suppose that Mr. Cable has borne witness to the very events or occurrences in dispute – namely, fixed, non-negotiable, 7% underwriting fees.

That Mr. Cable happens to be a lawyer is of no moment.  Lawyers, even those representing adversaries, are not immune from discovery (*see*, argument "B"

below).    If Mr. Cable were counsel to GM, and observed a GM automobile's participation in an accident, his fact testimony would be available without regard to his general auto industry expertise.

Mr. Cable argues that it matters that the class has not yet been certified.    It does not.    Were this an individual action alleging conspiracy to fix IPO's meeting a particular profile, plaintiffs would be entitled to examine someone reasonably likely to have been a fact witness to that conspiracy.

In the previous motion and here again, Mr. Cable makes no reasoned attempt to argue that his deposition is not calculated to lead to the discovery of admissible evidence.    The crux of what he does assert is that he had had no direct involvement with the named plaintiffs in this putative class action, and their particular IPOs.    *See* Cable motion at 3.    This argument is irrelevant.    Plaintiffs assert that defendants have conspired to fix the underwriting fees of *all* IPOs between the range of approximately $20 million and $80 million at 7%.    *See* complaint at ¶¶49-50, Kovel Aff., Exh. B.    A fact witness to the conspiracy is as relevant for an individual suitor as for a class representative.    The unwillingness of firms to negotiate on price is bedrock evidence for the existence of a price-fixing conspiracy.    *See National Collegiate Athletic Ass'n v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 99-100, 104 S.Ct. 2948, 2959 (1984) (minimum aggregate price a mechanism that "operates to preclude any price negotiation between [parties and constitutes] horizontal price fixing, perhaps the

paradigm of an unreasonable restraint of trade").

Mr. Cable perverts the earlier quash order when he writes that its language – "the transactions at issue in this litigation" – is limited to evidence concerning plaintiffs' particular IPO's. Cable motion at 3. If that were what the court intended, then the quash motion would have been unconditionally granted, as plaintiffs do not suggest that Mr. Cable has any knowledge particular to plaintiffs' transactions. "The transactions at issue" encompass all indicative of the conspiracy, and proof of that conspiracy is necessary whether plaintiffs are suing individually or representationally. That is relevant to plaintiffs acting both as individual and class representatives.

## ARGUMENT

### A.    Standards and Burdens

Plaintiffs are not required to show *ex ante* that Mr. Cable has relevant evidence. But if they were, the mere authentication of the Cable article and adoption of his statements alone would justify the deposition, under either the correct standard or the one earlier applied in the order on motion to quash.

The party seeking protection must show that "the discovery [does not appear] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). *See Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961) ("there is a particularly heavy burden upon a deponent to make a substantial showing in support of a motion to quash as contrasted to some more limited protection"); *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 139 F.R.D. 269, 275 (D.Mass.1991) (same). "Decisions quashing subpoenas ad testificandum are accordingly rare." *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 10 (D.Mass. 1990).

Mr. Cable argues that he has not been involved with any of the named plaintiffs in the underlying case. This is a red herring. The testimony sought would be discoverable even if plaintiffs were bringing individual actions. Any evidence against any of those defendants that serves to prove a conspiracy will directly bear even on the individual cases of the named plaintiffs. The Cable testimony also would be reasonably

calculated to lead to the discovery of commonality issues in respect of class certification. It shows that defendants engage in the common course of fixing underwriting fees at 7%. Mere authentication of his published statements respecting "fixed", "non-negotiable" 7% fees has important and obvious evidentiary merit, easily surpassing rule 26 muster.

## B.    Facts, Not Expertise

Mr. Cable says plaintiffs seek to use him to obtain "an unretained expert's opinion or information." Cable motion at 4-5. This is not so. Mr. Cable has stated publicly, voluntarily, in a broadly published journal and continually on his firm's website, that he has knowledge of those pivotal facts that tend to show a price-fixing conspiracy. Plaintiffs seek the factual underpinnings for Mr. Cable's factual assertion that IPO underwriting fees are "fixed" and "non-negotiable." The underlying facts of these assertions are both relevant and discoverable. *See Covey Oil Company v. Continental Oil Company*, 340 F.2d 993 (10th Cir. 1965), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965) (in antitrust case general relevancy sufficient to require a nonparty witness to divulge trade secrets that related to price, cost and volume of sales of gasoline); *GTE Products Corporation v. GEE*, 112 F.R.D. 169 (D.Mass. 1986). *United States v. International Business Machines Corporation*, 66 F.R.D. 186 (S.D.N.Y. 1974) held that the size and significance of the antitrust case supports the principle that any inconvenience to third parties was outweighed by public interest in seeking the truth. The charge that the conspiracy has contaminated thousands of tender

offers is of such obvious public significance as to make paltry any minor inconvenience to this witness.

And fact witnesses of antitrust violations are not a dime a dozen. *See Callahan v. A.E.V., Inc. et al.*, 947 F.Supp 175, 179 (W.D. Pa 1996) ("[d]iscovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business relationships") (citations omitted).

## C.     There Is No Lawyer Immunity From Discovery

That Mr. Cable was a lawyer functioning in the subject matter of the litigation does not immunize him from fact discovery. This would be so even if he were opposing counsel. *See Carey v. Textron, Inc.*, 224 F.R.D. 530, 531 (D. Mass. 2004) ("attorney client privilege is not grounds for the issuance of a protective order [prohibiting attorney depositions]"); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2nd Cir. 2003) ("the standards set forth in Rule 26 require a flexible approach to lawyer depositions ... that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices"); *In re Tutu Water Wells Contamination*, 184 F.R.D. 266, 267 (D.Virgin Islands 1999) ("The courts in this circuit hold that there is no general prohibition against obtaining the deposition of opposing counsel with regard to relevant, non-privileged information").

D.    **The Possibility of Objectionable Questions Does
      Not Justify Preclusion of Any Examination**

      *A priori* preclusion of the examination because objections may arise is just
not done.  q*ad.inc v. ALN Associates, Inc.*, 132 F.R.D. 492, 495 (N.D.Ill.1990) ("this
Court ... rejects any prior restraint in favor of permitting the deposition to go forward,
with any individualized objections to be dealt with during its regular course."); *Cook Inc.
v. C.R. Bard, Inc.*, 2003 WL 23009047 at *1 (S.D.Ind. Sep 18, 2003) ("the desirability of
placing concrete objections before the Court for resolution ... outweighs the need to
protect attorneys from the risk of sitting through frivolous depositions."); *Simmons
Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D.Kan. 2000) ("Courts do not favor thwarting
a deposition.  Barring extraordinary circumstances, courts rarely will grant a protective
order which totally prohibits a deposition.") (citations and quotations omitted); *Harding
v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1089 (D.N.J. 1996) ("there is no general
prohibition against obtaining the deposition of adverse counsel regarding relevant, non-
privileged information.") *quoting, Johnston Development Group, Inc. v. Carpenters
Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990); *Horizon Holdings, L.L.C. v.
Genmar Holdings, Inc.*, 2002 WL 1822404, *2  (D.Kan. 2002) ("[a]n attorney, even an
attorney for a party to the suit, is subject to being deposed. Courts do not favor thwarting
a deposition.  Barring extraordinary circumstances, courts rarely will grant a protective
order which totally prohibits a deposition"); *Kaiser v. Mutual Life Ins. Co. of New York*,
161 F.R.D. 378, 381 (S.D.Ind. Aug 23, 1994) ("we do not believe that depositions of

counsel are so rarely justified or so great a phenomenon as to warrant imposing a stricter standard for their allowance"); *Shiner v. American Stock Exchange*, 28 F.R.D. 34 (S.D.N.Y. 1961) (challenges to conducting an attorney's deposition based upon claims of privilege held to be premature); *Hunt Intern. Resources Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D.Ill. 1983) (preventing deposition on such grounds usurps the court's role in deciding if questions seek privileged information).

Mr. Cable claims that it would be burdensome "to recall the specific incidents that have informed his judgment." Cable motion at 5.   The recitation of the proposition demonstrates its preposterous nature.   The deposition will be worthwhile if all plaintiffs obtain from this deposition is an authentication of the factual statements Mr. Cable made in the Cable article.

Mr. Cable also intimates that every question is going to invade the attorney-client privilege.   The presumptive reality is that in the course of his representation of issuers in connection with IPOs he had dealings with underwriters and others who were not clients.  Testimony about non-client communications is not privileged.

Finally, in a widely published journal article, Mr. Cable identified issuers whom he has represented.    In the same article, he made factual statements that underwriting fees are "fixed" and "non-negotiable".  Given the voluntary disclosures of both clients and factual observations, it is unlikely that the subject matter of the deposition violates attorney-client confidences.   Stated otherwise, Mr. Cable did not

reveal client confidences in the Cable article and thus shows that he has testimony to offer that will not reveal them in a deposition.

## CONCLUSION

For the foregoing reasons, this Court should sustain the subpoena.


Dated: April 22, 2005

Respectfully submitted,

 /s/     Andrew C. Griesinger
Andrew C. Griesinger (BBO # 211285)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110-2214
(617) 542-9900

Of Counsel:

**KIRBY McINERNEY & SQUIRE, LLP**
Roger W. Kirby, Esq.
David E. Kovel, Esq.
830 Third Avenue
New York, NY 10022
(212) 371-6600

Attorneys for Plaintiffs