# United States Court of Appeals
## For the First Circuit

No. 05-1690

IN RE:  PUBLIC OFFERING PLE ANTITRUST LITIGATION.

JEFFREY A. WEINMAN, AS TRUSTEE FOR WESTERN PACIFIC AIRLINES;
EQUALNET COMMUNICATIONS CORPORATION,

Appellants,

v.

STUART CABLE,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

.[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

Roger W. Kirby with whom David Kovel, Andrew C. Griesinger,
Kirby McInerney & Squire LLP and Griesinger, Tighe & Maffei, LLP
were on brief for appellants.
Christopher T. Holding with whom Henry S. Dinger and Goodwin
Procter LLP were on brief for appellee.

October 20, 2005

**COFFIN, Senior Circuit Judge.** This is an appeal of an order of the United States District Court for the District of Massachusetts granting a motion to quash a discovery subpoena of a nonparty witness. It is ancillary to an antitrust action brought in the Southern District of New York by two formerly publicly traded companies against some twenty-eight investment banks alleging a conspiracy to fix fees for underwriting services related to initial public offerings of stock (IPOs).[1]  Plaintiffs-appellants sought both documents and testimony from a Boston attorney, appellee Stuart Cable. For reasons we explain below, we vacate the district court's ruling and remand the case for further consideration.

## I. Factual Background

The stimulus of appellants' efforts was an article in 2001 in the IPO Journal, largely quoting Cable's comments concerning his law firm, his IPO experience (representing nine companies issuing IPOs and three investment bank-underwriters), and his "Top Ten" tips for corporate chief executives contemplating an IPO process. His second "tip," labeled "Cutting the Economic Deal Among your Bankers," asserted: "The deal between you and the bankers is non-negotiable (7% of the gross)." In the same paragraph, he continues with the advice to "[m]ake certain that the economics among

---

[1] We are informed that class certification papers are soon to be submitted.

underwriters [i.e., lead underwriter vs. others involved] are negotiated up-front . . . ." (emphasis in original). The eighth tip, entitled "Pricing Your Deal," states in part, "You will not have a meaningful opportunity to negotiate . . . . [T]he managing underwriter (without dissent from his co-managers) will present you with the results of their order book -- a _fait accompli_ as to pricing . . . ."

Appellants, on February 25, 2005, served a subpoena on Cable asking him to testify in a deposition on March 17, 2005, and to produce non-privileged documents "that form the basis for your assertions in the IPO Journal" that an issuer of common stock pays a non-negotiable, fixed price of seven percent of gross. The subpoena also called for documents relating to a subsequent article in another publication, not at issue here, and documents relating to any testimony or interviews he may have given, as well as articles or lectures by him concerning the pricing of underwriting fees.

Appellee Cable moved to quash the subpoena, averring by affidavit that he had not been involved in any of appellants' IPOs, that his views in the articles cited had been shaped by his twenty-five years of dealing with IPOs, and that identifying any pertinent documents would require him to canvass the files of these years and perhaps to consult with clients.

On March 17, the scheduled date for deposition, a magistrate judge held a telephone conference with counsel. The transcript of that conference reveals the exchange between the parties. Appellee based his motion to quash on Fed. R. Civ. P. 45(c)(3)(B)(ii), which allows suppression of a subpoena seeking an "unretained expert's opinion . . . resulting from the expert's study made not at the request of any party." Appellants' counsel rejoined that they were not seeking Cable's opinion or expertise, but "his observation of an event that happened." In a brief order issued the same day, the magistrate judge reported that appellants had come forth with no evidence that Cable had any factual information about the specific transactions at issue, only the argument that it was likely that, given his experience representing both sides in many IPOs, he had some non-privileged factual information. The magistrate judge rested her conclusion on her perception that appellants were seeking an unretained expert's opinion, contrary to the safeguards of Fed. R. Civ. P. 45(c)(3)(B)(ii). The motion to quash was granted without prejudice.

Appellants objected and moved for reconsideration of the order. They argued first that the magistrate judge had erred in placing the burden on them to produce relevant evidence since Fed. R. Civ. P. 26(b)(1) sets the standard as producing evidence "reasonably calculated to lead to the discovery of admissible

evidence."[2]   In any event, they asserted that they had met any burden, since appellee's statements in the IPO Journal article were "factual assertions" and they were seeking the "factual underpinnings" for those assertions.  They noted that any evidence implicating any defendants in a broad-ranging conspiracy would impact the case of the named plaintiffs, even in the absence of class certification, and pointed out that Cable had represented six issuers between 1995 and 1997 in IPOs within the ranges specified in the complaint ($20 to $80 million), where the underwriting fee was seven percent.

A second subpoena was soon served seeking the witness's testimony and documents relating only to the IPO Journal piece. Appellee Cable moved again to quash, supplying an affidavit that he could not recall considering any documents, and had no files, and that his statements were based on his twenty-five years of practice.  Appellee's memorandum supporting his motion made two arguments:  (1) that, given his lack of any information concerning the appellants' own IPOs, the only conceivable reason for seeking

---

[2] Rule 26(b)(1) states in part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

his deposition was to obtain opinion evidence concerning general industry practice; and (2) the subpoena would subject Cable to an "undue burden," barred by Fed. R. Civ. P. 45(c)(3)(A)(iv).  Not only would appellee face the burdensome task of trying to identify specific incidents and considering what is privileged information, but his status as a nonparty was entitled to special weight.

Appellants opposed the motion by filing an affidavit of one of their attorneys, making more specific the information concerning Cable's representation of issuers of IPOs between 1995 and 1997. Of the deals noted in the article, six were in the target range of $20 to 80 million, all at seven percent.  Five of the six underwriters were defendants in the instant case.

On May 3, 2005, the district court allowed the motion to quash without opinion.

## II. Issues Presented

In reviewing a district court's discretionary judgment, the underlying issue is, of course, whether the court abused its discretion by overlooking a relevant factor, improperly giving weight to an improper factor or committing "a palpable error of judgment in calibrating the decisional scales," Texas Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 883 (1st Cir. 1995).  See Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 64 n.7 (1st Cir. 2003) (trial-court discovery rulings reviewed for abuse of discretion).  In discovery matters, the bar is high.

There must be a "clear showing" that the court's order was "plainly wrong and resulted in substantial prejudice to the aggrieved party." Heidelberg Americas v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003) (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989)).

Despite this demanding standard of review, the existence of unanswered questions presented by the record makes us reluctant to affirm without the benefit of the district court's informed and particularized assessment. We explain.

We have traced the proceedings to surface the variety of issues presented. Although the magistrate judge identified the basis of her ruling, i.e., that impermissible "unretained expert" testimony was being sought, we are reviewing the decision of the district court. Since the court did not set forth its reasoning, we may affirm based on any dispositive issue that is both readily evident and sufficiently supported by the record. See Reich v. Simpson, Gumpertz & Heger, Inc., 3 F.3d 1, 4 (1st Cir. 1993). Hence our search for such an issue.

There is, first of all, the issue dealt with by the magistrate judge - whether appellants seek unretained expert testimony or whether, as they argue, they seek not opinion but "factual underpinnings" of Cable's IPO Journal statements. The nature of the testimony sought from appellee - observations from years of practice - raises the question whether the information sought is of

the nature described by Fed. R. Civ. P. 45(c)(3)(B)(ii), i.e., does it result from Cable's "study made not at the request of any party"?

Associated with this is the threshold of relevance to which the evidence sought should rise. Need it be reasonably calculated to lead to evidence directly connected with the transactions involving the appellants, or is it enough if it is likely to lead to proof of a general conspiracy that inevitably would impact appellants?

Moreover, even if what is sought is factual and, if admissible, relevant, how likely is it that Cable's testimony could survive claims of privilege? Presumably Cable could not, in the absence of a waiver of privilege, breach confidences entrusted to him by either issuer or underwriter clients. At oral argument, appellants sketched two different scenarios. Were Cable to testify to representations or communications of a third party in the course of representing either an issuer or an underwriter, such would not violate the attorney-client privilege. Similarly, had Cable been instructed to tell something to a third party, the privilege would not survive.

Since data already exists of the widespread prevalence of parallel pricing, another question that must be addressed is whether inquiries into these scenarios would be calculated to

-8-

produce non-cumulative evidence pointing to a traditional conspiracy.

Finally, there remains the question not addressed below: whether appellants' discovery requests pose such an "undue burden" on appellee Cable that, under Rules 26©) and 45(c)(3)(a)(iv), quashing the subpoena is warranted even though relevant materials or testimony is sought. Although the subpoena at issue requested documents that were considered in the preparation of the IPO Journal article, appellants now say in their brief that, since appellee claims to have no such documents, the only remaining question is whether appellants may examine him. Appellants cite Moore's Federal Practice for the proposition that "quashing a subpoena ad testificandum is very rare because until the witness is asked specific questions, usually there is nothing on which to base a motion to quash." 9 James Wm. Moore et al., Moore's Federal Practice, § 45.04[3][a] (3d ed. 2005).

Even with appellants' reduced request, the evaluation of benefit to appellants versus burden on appellee is a demanding and sensitive one. On the one hand, appellee is a nonparty to the underlying litigation. This fact is entitled to special weight in evaluating the balance of competing needs. Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). On the other hand, appellee's participation in the production of the IPO Journal article highlighted his breadth of experience representing both

-9-

sides in IPOs; his extensive work in the field enabled him to make unqualified assertions concerning the lack of any meaningful negotiation in arriving at underwriting fees. Even appellee admits that his information is "not wholly irrelevant to plaintiffs' claims."

### III. Conclusion

While findings of fact and conclusions of law are not required by Fed. R. Civ. P. 52(a) for granting or denying such a motion as that before us, and we ordinarily may assume that the district court weighed all appropriate factors, <u>Microfinancial, Inc.</u> v. <u>Premier Holidays Int'l, Inc.</u>, 385 F.3d 72, 76-77 (1st Cir. 2004), we cannot say here with confidence that "the record permits a clear understanding of why the district court ruled as it did," <u>id</u>. at 77 n.2.

The underlying antitrust litigation in another circuit is not trivial. Prompt appeal of this ancillary matter is afforded in this circuit and, despite the additional burden on our resources, such a proceeding must be and be seen to be meaningful. Because of the variety of issues to which we have alluded and particularly because of the requirement for the sensitive balancing of interests that we have described, and that has hitherto not been addressed, we conclude that we need the benefit of the district court's reasoning.

-10-

We therefore vacate the judgment and remand the case to allow the district court to consider the issues we have identified and set forth its conclusions.

Vacated and remanded.    All parties to bear their own costs.